UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RONDLE LEE SNODGRASS, III,

        Petitioner,

v.                                  Case No. 3:22-cv-79-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## <u>ORDER</u>

### I. Status

Petitioner Rondle Lee Snodgrass, III, an inmate of the Florida penal system, initiated this action in the United States District Court for the Northern District of Florida on December 1, 2021,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1).[2] The assigned judge transferred the action to the Middle District of Florida on January 24, 2022. See Order (Doc. 4). Snodgrass is proceeding on an Amended Petition (Doc. 9), in which he challenges a 2014 state court (Duval County, Florida) judgment of conviction for first-degree murder. He raises seven grounds for relief. See

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Amended Petition at 7–34. Respondents submitted a memorandum in opposition to the Petition. <u>See</u> Response (Doc. 12). They also submitted exhibits. <u>See</u> Docs. 12-1 through 12-31. Snodgrass filed a brief in reply. <u>See</u> Reply (Doc. 16). This action is ripe for review.

## II. Relevant Procedural History

On March 22, 2012, a grand jury indicted Snodgrass on one count of first-degree murder. Doc. 12-8 at 66–68. In the indictment, the State alleged Snodgrass killed Michael Wilson on August 20, 2011, by stabbing him. <u>Id.</u> Snodgrass proceeded to a trial, and on October 30, 2013, a jury found him guilty of the single offense charged. <u>Id.</u> at 126–27. On January 17, 2014, the trial court sentenced Snodgrass to life in prison. <u>Id.</u> at 154–59.

On direct appeal, with the benefit of counsel, Snodgrass filed an initial brief, arguing the trial court erred when it denied the defense's motion for judgment of acquittal. Doc. 12-14 at 2–34. The State filed an answer brief. Doc. 12-15 at 2–19. The First District Court of Appeal (First DCA) per curiam affirmed Snodgrass's conviction and sentence without a written opinion on May 26, 2015, Doc. 12-16 at 2, and issued the mandate on August 3, 2015, <u>id.</u> at 10.

2

On February 15, 2016, Snodgrass filed a state petition for writ of habeas corpus, raising three grounds of ineffective assistance of appellate counsel. Doc. 12-18 at 2–51. The First DCA denied the petition on the merits on March 1, 2016, Doc. 12-19 at 2, and on April 14, 2016, it denied rehearing, Doc. 12-20 at 7.

Subsequently, on May 4, 2016, Snodgrass filed a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a). Doc. 12-4 at 2–14. The postconviction court denied relief on December 8, 2017. Doc. 12-5 at 2–4. Snodgrass did not pursue an appeal.

On December 18, 2017, Snodgrass filed an amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and a "Notice of Amendment," arguing that the issues raised therein were timely as the "'sole issues argued within relate[] back to the one ground/grounds initially presented in his timely-filed Rule 3.850 motion, and only expound[] upon the claims already before the court (File date: 5/4/16).'" Doc. 12-24 at 3 (alterations in original); see also Doc. 12-27 at 6–59. In the amended Rule 3.850 motion, Snodgrass alleged counsel was ineffective when he failed to: (1) adequately argue the defense's motion for a judgment of acquittal; (2) object to the prosecutor's misstatement of the law; (3) object to the trial court's

3

response to a jury question; (4) retain an expert witness; (5) properly argue the defense's theory of the case during closing argument; (6) call a witness; (7) impeach a State witness; and (8) object to the prosecutor's improper remarks during closing arguments. Doc. 12-27 at 9–42. The postconviction court determined Snodgrass never filed an initial Rule 3.850 motion and denied the amended Rule 3.850 motion as untimely filed. Doc. 12-27 at 60–63. On August 30, 2019, the First DCA reversed that decision and remanded the matter for an evidentiary hearing because "factual issues remain[ed]" as to the filing of Snodgrass's initial Rule 3.850 motion. Doc. 12-24 at 7.

On remand, the postconviction court held an evidentiary hearing. Doc. 12-27 at 293–312. It ultimately found Snodgrass had filed an initial Rule 3.850 motion on May 4, 2016, id. at 313–17, and as such, Snodgrass timely filed his amended Rule 3.850 motion, id. On March 13, 2020, the postconviction court denied Snodgrass's amended Rule 3.850 motion. Id. at 399–415. The First DCA per curiam affirmed the postconviction court's denial of relief on June 9, 2021, Doc. 12-31 at 2, and on July 7, 2021, it issued the mandate, id. at 4.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Snodgrass's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's

6

adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As

7

explained by the Supreme Court in <u>Williams v.</u>
<u>Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d
389 (2000), § 2254(d)(1) consists of two distinct
clauses: a "contrary to" clause and an "unreasonable
application" clause. The "contrary to" clause allows
for relief only "if the state court arrives at a
conclusion opposite to that reached by [the Supreme]
Court on a question of law or if the state court
decides a case differently than [the Supreme] Court
has on a set of materially indistinguishable facts." <u>Id.</u>
at 413, 120 S. Ct. at 1523 (plurality opinion). The
"unreasonable application" clause allows for relief
only "if the state court identifies the correct
governing legal principle from [the Supreme] Court's
decisions but unreasonably applies that principle to
the facts of the prisoner's case." <u>Id.</u>

Second, § 2254(d)(2) provides for federal review for
claims of state courts' erroneous factual
determinations. Section 2254(d)(2) allows federal
courts to grant relief only if the state court's denial of
the petitioner's claim "was based on an unreasonable
determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. §
2254(d)(2). The Supreme Court has not yet defined §
2254(d)(2)'s "precise relationship" to § 2254(e)(1),
which imposes a burden on the petitioner to rebut the
state court's factual findings "by clear and convincing
evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S.
Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield</u>
<u>v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192
L.Ed.2d 356 (2015). Whatever that "precise
relationship" may be, "'a state-court factual
determination is not unreasonable merely because
the federal habeas court would have reached a
different conclusion in the first instance.'" <u>Titlow</u>, 571
U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>,

8

> 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d
> 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test

10

before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet

the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d

1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose

of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

we expect will often be so, that course should be followed." Strickland, 466

U.S. at 697.

    A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation
> is a most deferential one." Richter, 562 U.S. at ---,
> 131 S. Ct. at 788. But "[e]stablishing that a state
> court's application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so." Id. (citations and
> quotation marks omitted). "The question is not
> whether a federal court believes the state court's
> determination under the Strickland standard was
> incorrect but whether that determination was
> unreasonable — a substantially higher threshold."
> Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct.
> 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument that
> counsel satisfied Strickland's deferential standard,"
> then a federal court may not disturb a state-court

11

decision denying the claim. <u>Richter</u>, 562 U.S. at ---,
131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Snodgrass alleges counsel was ineffective when he failed to adequately argue the defense's motion for a judgment of acquittal. <u>See</u> Amended Petition at 7. According to Snodgrass, the State's theory of the case required the jury to impermissibly "pyramid inferences." <u>Id.</u> He contends counsel should have argued that none of the witnesses who testified at trial saw him with a knife during the incident and that the knives recovered from the scene did not contain his DNA. <u>See</u> <u>id.</u> at 9.

12

Snodgrass raised a substantially similar claim in his amended Rule 3.850 motion. Doc. 12-27 at 9–13. In denying relief, the postconviction court explained:

> At the close of the State's case-in-chief, Defense Counsel moved for a judgment of acquittal. Counsel's motion was a "boilerplate" motion, in that he simply argued that the State failed to prove a prima facie case against Defendant. See Fla. R. Crim. P. 3.850.
>
> Defense Counsel then renewed his motion at the close of evidence. "The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence, and where the state has brought forth competent evidence to support its claim that each element of the crime has been performed, a judgment of acquittal will not lie." Cunningham v. State, 385 So. 2d 721, 722 (Fla. 3d DCA 1980). "The trial court should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law. McBride v. State, 7 So. 3d 1146, 1148 (Fla. 2d DCA 2009) (internal quotations omitted); see also State v. Odom, 56 So. 3d 46, 49 (Fla. 5th DCA 2011) ("In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that the fact-finder might fairly infer from the evidence.").
>
> Here, the State presented substantial evidence that was legally adequate to support a conviction. Stated differently, it is clear there was a reasonable view of the evidence from which the jury could find Defendant guilty (indeed, the jury did so). While Defendant may wish to discount the testimony of the

13

> State's witnesses, doing so requires rendering a credibility determination that only the jury can make. State v. Shearod, 992 So. 2d 900, 903 (Fla. 2d DCA 2008). Thus, the record demonstrates that even the most eloquent and persuasive advocate could not have succeeded in convincing the trial court to grant a judgment of acquittal in this case. As such, Ground One of Defendant's motion fails for lack of prejudice.

Id. at 401–02 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-31 at 2.

To the extent that the First DCA decided this claim on the merits,[3] the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Snodgrass is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Snodgrass's ineffectiveness claim is still without

---

[3] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 584 U.S. at 125.

14

merit because the record supports the postconviction court's conclusion. In reviewing a motion for a judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis omitted); see also Gudinas v. State, 693 So. 2d 953, 962 (Fla. 1997) (quoting Taylor v. State, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.").

When viewed in a light most favorable to the State, the evidence presented at trial could have led a rational trier of fact to find Snodgrass committed first-degree murder beyond a reasonable doubt. Witnesses testified that during a party at Snodgrass's and Shea Carter-Strong's[4] house, multiple fights broke out on the lawn. Doc. 12-10 at 43–44, 55, 77. One of the partygoers, James Ton, testified that Snodgrass and the victim, Michael Wilson, fought. Id. at 55. He explained that when Wilson got into his truck to leave the house, Snodgrass began to punch him through the driver's side

---

[4] Snodgrass's codefendant.

window. Id. at 55–56. Carter-Strong was also present at the window. Id. at 56. According to Ton, Snodgrass appeared to stab Wilson in the left eye with a rusty screwdriver, and in doing so, he nicked Carter-Strong on the forehead. Id. at 57–58. Justin Smith, another partygoer, also testified that Snodgrass had a screwdriver in his hand, and Carter-Strong appeared to be bleeding when he was next to Snodgrass at the truck window. Id. at 181.

Carter-Strong testified that he was beside Snodgrass at the driver's side window of Wilson's truck when Snodgrass punched Wilson. Doc. 12-11 at 28. They backed away from the window when the truck began to move and returned to the house. Id. at 28–29. Carter-Strong realized that he was bleeding from the head; when Snodgrass saw the blood, he stated, "[H]e's not going to get away with doing that to your face." Id. at 29–30. Snodgrass left, but Carter-Strong did not know where he went after making the statement. Id. at 30. Carter-Strong then left the bathroom, grabbed a knife, and returned to the truck. Id. He entered the passenger-side door of the truck and stabbed Wilson in the back. Id. at 31. According to Carter-Strong, Wilson was already slumped over when he stabbed him. Id.

The medical examiner determined that straight-edge and serrated knives caused multiple wounds to Wilson's chest and lung. Id. at 125–26.

16

These wounds were fatal. Id. at 131, 134. Wilson also sustained wounds to his back from both types of knives. Id. at 128–31. The medical examiner testified that Wilson had wounds around his left eye, but he could not determine whether a blade or sharp screwdriver caused the injuries. Id. at 121. On cross-examination, the medical examiner conceded it was more likely than not a blade caused the injuries to Wilson's eye. Id. at 136.

In considering the motion for a judgment of acquittal, the trial court had the testimony of two individuals who witnessed Snodgrass fight Wilson and stab him in the left eye with a sharp object.[5] Carter-Strong also heard Snodgrass threaten Wilson, and when he returned to the truck, he found Wilson already slumped over in the seat. While Snodgrass points to the lack of DNA evidence on knives that law enforcement recovered from the scene, "the weight of the evidence and the witnesses' credibility are questions solely for the jury." Shearod, 992 So. 2d at 903. Based on this evidence, there is no reasonable probability the outcome of the trial would have been different because the trial court would not have granted the motion for a judgment of

---

[5] Both Ton and Smith testified that Snodgrass appeared to stab Wilson in the left eye with a screwdriver. Doc. 12-10 at 57–58, 181. However, Ton described the lighting as "[v]ery dim" and noted he was five to six feet away from Snodgrass and Carter-Strong. Id. at 57. Smith testified he was approximately 20 feet away from them. Id. at 180

acquittal. See Jackson, 443 U.S. at 319; Gudinas, 693 So. 2d at 962. Therefore, even assuming arguendo counsel performed deficiently, Snodgrass has failed to demonstrate prejudice. As such, relief on the claim in Ground One is due to be denied.

### B. Ground Two

Next, Snodgrass argues counsel was ineffective when he failed to object to the prosecutor's misstatement of the legal standard for a motion for a new trial. See Amended Petition at 10. He alleges that counsel filed a written motion for a new trial, arguing that the jury's verdict was contrary to the weight of the evidence. See Doc. 12-27 at 13; see also Amended Petition at 10. However, during a hearing on that motion, the prosecutor relied on his argument at trial in response to the defense's motion for a judgment of acquittal. See Doc. 12-27 at 13–14; see also Amended Petition at 10. Snodgrass explains that a motion for a judgment of acquittal concerns the sufficiency of the evidence, whereas a motion for a new trial concerns the weight of the evidence. See Doc. 12-27 at 14; see also Amended Petition at 10. He contends that if counsel had objected to the prosecutor's argument, the trial court would have granted a new trial. See Amended Petition at 10.

Snodgrass raised a substantially similar claim in his amended Rule 3.850 motion. Doc. 12-27 at 13–16. The postconviction court denied relief, stating:

> Florida Rule of Criminal Procedure 3.600(a)(2) provides a trial court shall grant a new trial if the jury's verdict is contrary to the law or the weight of the evidence. As the Fourth District Court of Appeal summarized:
>
>> The "sufficiency of the evidence" standard examines whether the evidence presented is legally adequate to permit a conviction while the weight of the evidence standard evaluates whether a greater amount of credible evidence supports an acquittal. In deciding a motion for new trial pursuant to Rule 3.600(b), the trial court acts as a "safety valve" by "granting a new trial where the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict."
>
> Velloso v. State, 117 So. 3d 903, 904 (Fla 4th DCA 2013).
>
> Here, it is clear that Defendant suffered no prejudice because it would have been improper for the trial court to grant the motion for a new trial. Irrespective of how well Defense Counsel litigated his motion for new trial, the record evidence is such that there is no reasonable probability the trial court would have granted the motion. Indeed, the trial transcript demonstrates there was not a "greater

19

> amount of credible evidence" to support an acquittal and that the weight of the evidence in fact supported a conviction.

Id. at 403–04 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-31 at 2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Snodgrass is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Snodgrass's ineffectiveness claim is still without merit because the record supports the postconviction court's conclusion. Considering the evidence as detailed in Ground One, supra, no reasonable probability exists that the trial court would have granted the defense's motion for a new trial even if counsel had made the suggested argument

20

because the weight of the evidence supported the jury's verdict. Accordingly, Snodgrass is not entitled to federal habeas relief on the claim in Ground Two.

## C. Ground Three

As Ground Three, Snodgrass argues counsel was ineffective when he failed to object to the trial court's response to a jury question. See Amended Petition at 14. The record reflects the following exchange occurred approximately seven minutes after the jury began to deliberate:

> THE COURT: Let's put this on the record. Is Mr. Snodgrass still around?

> THE BAILIFF: Right here, Your Honor.

> THE COURT: All right. What I'm going to do Miss Rose, I'm going to let you repeat what you just said to me since they're your words, what the jury has asked Miss Rose our civilian bailiff.

> THE BAILIFF: They want to know if they continue through and if they—if for some reason they run into a problem and they can't reach a verdict, what to do. I told them just push the button, and you know, write that down. And I will give it to the judge and she'll make the decision.

> THE COURT: And they asked—didn't they also ask you how late they should go?

> THE CLERK: If they have a time limit.

> THE BAILIFF: Time limit, yeah.

21

THE COURT: Why don't we bring them out? I'd like to clarify the time limit, if that's fine. What I'd like to let them know is we are obviously happy to stay here as long as they're comfortable deliberating, but if they need to return tomorrow, that's an option. Just so they don't think they have to—there's any—I don't want them to think there's any time limit of deliberating. Okay? So if you'll just bring them back out. Is that fine with the State?

MS. PERRY [For the State]: Yes, Your Honor.

MR. THOMPSON [For the State]: Yes, Your Honor.

THE COURT: Is that fine with the defense?

MR. FLETCHER [For the Defense]: Yes, Judge.

THE COURT: I just don't want them to think there's any certain amount of time they get.

(Jury present.)

THE COURT: You-all don't need to sit down. Just a real quick clarification. All right. Madam Bailiff said that you-all asked the question, how much time you had, things like that. Just to let you know, you-all have as much time as you want. There is no set time for how long you-all deliberate. You deliberate until you make a decision. Now, that being said, if you-all begin to get tired, you can come back tomorrow, so please don't think you have to make the decision today. You can come back tomorrow. We're all aware this is a very important decision to make, and if you as a group become tired and want to come back tomorrow, that is perfectly acceptable. But you have—even if you needed to come back the next day, you could. You have all the time you need. Okay?

22

There is no limit. All right? All right. Go to the jury room. All right. Thank you so much.

(Jury excused.)

THE COURT: I just wanted to clarify that there was no time limit. Thank you. It's approximately 2:15. The door is closed. Does the State have any exception or objection to what I just said?

MR. THOMPSON: No, ma'am.

THE COURT: Does the defense?

MR. FLETCHER: No, Your Honor.

THE COURT: Thanks. All right. We're in recess.

Doc. 12-12 at 59–62. Snodgrass complains that the trial court's response "created the spector [sic] that jurors would not be relieved on [sic] the 'hardships' of jury duty, unless a unamious [sic] 'decision' was reached." Amended Petition at 15. According to Snodgrass, the response "for[e]closed the possibility of a 'hung jury.'" Id.

Snodgrass raised a substantially similar claim in his amended Rule 3.850 motion. Doc. 12-27 at 16–18. The postconviction court denied relief, stating in pertinent part:

The transcript shows that the jury had not even yet begun deliberations at the time they asked this question. Thus, the jury's question was not one based on any sort of initial deadlock in being able to

23

reach a verdict. Instead, the question was aimed at identifying at the outset any time restrictions on deliberations. The trial court answered the question by assuring the jury that it could take all the time it needed to decide the case and need not do so within any fixed time boundaries. Defense Counsel had no basis to object to the trial court's answer to the jury's question because the answer was legally correct. See Thomas v. State, 748 So. 2d 970, 976 (Fla. 1999) ("It has long been the law that a trial court should not couch an instruction to a jury or otherwise act in any way that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position.") (emphasis added). It is clear the trial court simply wanted the jury to understand that it was not operating under a fixed countdown clock during its discussions.

The propriety of the trial court's instruction is reinforced by the lawfulness of an Allen charge. See Allen v. United States, 164 U.S. 492 (1896). "An Allen charge is a supplemental instruction generally given when it appears the jury is having difficulty reaching a verdict." Gahley v. State, 567 So. 2d 456, 459 (Fla. 1st DCA 1990). In Florida, a standard Allen charge is:

> I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far. Sometimes an early vote for discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.
>
> We are all aware that it is legally permissible for a jury to disagree. There are two things a jury can lawfully do:

24

agree on a verdict or disagree on what the facts of the case may truly be.

There is nothing to disagree about on the law. The law is as I told you. If you have any disagreements about the law, I should clear them up for you now. That should be my problem, not yours.

If you disagree over what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.

I have only one request of you. By law, I cannot demand this of you, but I want you to go back into the jury room. Then, taking turns, tell each of the other jurors about any weakness of your own position. You should not interrupt each other or comment on each other's views until each of you has had a chance to talk. After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried, and will discharge you with my sincere appreciation for your services.

You may now retire to continue with your deliberations.

Fla. Std. Jury Instr. (Crim.) 4.1

Thus, even in the hypothetical event that the jury had faced some initial deadlock during its discussion, it would have been appropriate for the trial court to once ask the jury to continue

deliberations. Here, no such initial deadlock occurred. The jury merely wanted to know how if it was operating under any fixed time limits and the trial court assured the jury that it could take all the time it wanted to discuss the case. Defense counsel had no legal basis to object to the trial court's actions and therefore was not deficient failing to object in the manner Defendant now advocates. See Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection."). Accordingly, this Court denies Ground Three of Defendant's motion.

Id. at 406–07. The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-31 at 2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Snodgrass is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Snodgrass's ineffectiveness claim is still without

26

merit. The jury inquired whether they had any time limit on their deliberations, and the trial court correctly responded that they did not. Indeed, it is unlikely the jury had engaged in substantive deliberations or reached a deadlock when they asked the question because they had deliberated for only seven minutes. See Doc. 12-12 at 58–59. Moreover, after the trial court responded to the question, the jury continued to deliberate for nearly two hours. See id. at 62–65. Considering the record, the trial court did not provide a coercive response, nor did it suggest a particular outcome was desired. Counsel was not deficient for failing to make a meritless objection. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (stating counsel is not ineffective for failing to raise a non-meritorious objection). Therefore, Snodgrass is not entitled to federal habeas relief on the claim in Ground Three.

## D. Ground Four

In Ground Four, Snodgrass argues counsel was ineffective when he failed to retain an expert witness. See Amended Petition at 18. He asserts that during trial, the State theorized that Snodgrass accidentally cut Carter-Strong's forehead as he stabbed Wilson. See id. at 20. According to

Snodgrass, an expert witness would have testified Carter-Strong cut his own forehead when he mishandled a knife. See id. at 19.

Snodgrass raised a substantially similar claim in his amended Rule 3.850 motion. Doc. 12-27 at 18–22. The postconviction court denied relief, stating:

> At the conclusion of the State's evidence, the trial court conducted a sworn colloquy with Defendant. During that colloquy, Defendant swore there were no other witnesses he wished to call and that there was no additional evidence he wished to present to the jury. Ground Four of Defendant's motion fundamentally contradicts Defendant's assertions to the trial court. Defendant may not obtain postconviction relief in that manner. See Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) ("A rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny postconviction claims that are refuted by such representations."). Accordingly, this Court denies Ground Four of Defendant's motion.

Id. at 408 (record citation omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-31 at 2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to

28

clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Snodgrass is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Snodgrass's ineffectiveness claim is still without merit because Snodgrass's allegations are facially insufficient to support a claim of ineffective assistance of counsel for failure to call an expert witness. Vague, conclusory, speculative, or unsupported claims cannot establish an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). More than mere conceivability is required to establish prejudice; indeed, the likelihood of a different result must be substantial, not just conceivable. Jenkins v. Comm., Ala. Dep't of Corr., 963 F.3d 1248, 1264 (11th Cir. 2020). The Court finds this claim is conclusory and speculative because Snodgrass merely alleges, without support, that an expert would have concluded Carter-Strong cut himself with a knife. Notably, the record evidence suggests a contrary conclusion. James Ton witnessed Snodgrass stab Wilson with a screwdriver while he stood next to Carter-Strong at

Wilson's truck window. Doc. 12-10 at 57–58. Justin Smith testified that after another partygoer pulled Snodgrass and Carter-Strong away from the window, he saw a screwdriver in Snodgrass's hand and noticed Carter-Strong had blood on him. Id. at 181. Considering the testimony presented at trial, this claim is speculative and does not entitle Snodgrass to federal habeas relief. See Tejada, 941 F.2d at 1559; Jenkins, 963 F.3d at 1264. Therefore, the Court will deny relief as to Ground Four.

### E. Ground Five

Next, Snodgrass contends counsel was ineffective when he failed to investigate and call Martha Jane Bowser as a witness. See Amended Petition at 23. He alleges that "pre-trial police reports" showed that Bowser informed law enforcement she had visited Carter-Strong's girlfriend's house and discovered her burning Carter-Strong's clothes from the incident. Id; see also Doc. 12-27 at 51.

Snodgrass raised a substantially similar claim in his amended Rule 3.850 motion. Doc. 12-27 at 25–27. The postconviction court denied relief, explaining:

> As noted in Ground Four above, the trial court conducted a sworn colloquy with Defendant at the close of the State's evidence. During that colloquy, Defendant swore there were no other witnesses he

30

wished to call and that there was no additional evidence he wished to present to the jury. As with Ground Four, Ground Six of Defendant's motion fundamentally contradicts Defendant's assertions to the trial court. Defendant may not obtain postconviction relief in that manner. See Kelley, 109 So. 3d at 812-13 ("A rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations."). Accordingly, this Court denies Ground Six of Defendant's motion.

Id. at 410 (record citation omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-31 at 2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Snodgrass is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Snodgrass's ineffectiveness claim is still without

merit. Carter-Strong testified that he was "bleeding severely" during the incident. Doc. 12-11 at 29. He further admitted to stabbing Wilson in the back. Id. at 31. As such, it does not appear that Bowser's testimony would contribute additional information regarding Carter-Strong's involvement in the murder.

On this record, Snodgrass has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Snodgrass has not shown prejudice. He has not shown a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Snodgrass's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Snodgrass is not entitled to federal habeas relief on the claim in Ground Five.

### F. Ground Six

In Ground Six, Snodgrass alleges counsel was ineffective when he failed to impeach Snodgrass's codefendant, Carter-Strong. See Amended Petition at 26. Snodgrass raised a substantially similar claim in his amended

Rule 3.850 motion. Doc. 12-27 at 28–30. The postconviction court denied

relief, explaining:

> Carter-Strong testified as a State witness during Defendant's trial. Inter alia, Carter-Strong testified as follows:
>
>> Q [State]: Where did you go at that point when the [victim's] truck started to move off?
>>
>> A [Carter-Strong]: I went to my house.
>>
>> Q: Where specifically?
>>
>> A: To my bathroom.
>>
>> Q: While you were at the truck window, did you realize that you were cut?
>>
>> A: It [sic] didn't realize I was cut, but I realized I was bleeding severely.
>>
>> Q: Where were you bleeding from?
>>
>> A: From my head.
>>
>> Q: Did you see the truck actually pull off?
>>
>> A: Yes, sir.
>>
>> Q: Now, you just stated you went to the bathroom, correct?
>>
>> A: Yes, sir.

Q: Did anyone else go to the bathroom with you?

A: Yes, sir.

Q: Who was that?

A: Kyndelle Hart and [Defendant] had followed us in there.

Q: Did he make any statements when— this defendant make any statements when got into your bathroom?

A: He looked at me and said, he's not going to get away with doing that to your face.

Q: At that point, do you know where the defendant went?

A: He left the bathroom.

Q: Do you know where he went, though?

A: No, sir.

"A court considering a claim of ineffective assistance of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied." Williamson v. State, 123 So. 3d 1060, 1065 (Fla. 2013) (quoting Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986)). Here, the record establishes that the prejudice component is not satisfied.

"Mistakes and errors made by counsel, including unreasonable errors, are not sufficient to

34

set aside the judgment unless the error actually prejudiced the defendant by affecting the judgment." State v. Anderson, 215 So. 3d 181, 184 (Fla. 5th DCA 2017). Indeed, "prejudice in the ineffective assistance of counsel analysis can be established only when the error alleged in the grounds for relief affects the validity of the conviction and sentence at issue such that there is a reasonable probability that the outcome of the trial would have been different." Id. Here, while it would have been prudent for Defense Counsel to try to impeach Carter-Strong's account of his bathroom conversation with Defendant, there is no reasonable probability that, had Defense Counsel done so, the ultimate result of Defendant's trial would have changed. Defense Counsel aggressively and effectively cross-examined Carter-Strong, which included questions designed to highlight Carter-Strong's personal stake in the case and his significant level of intoxication on the night of the murder. Additionally, while Carter-Strong's recollection of Defendant's statement in the bathroom may have changed, the remainder of his account of the murder remained consistent. Finally, the State presented other substantial evidence against Defendant.

In light of Defense Counsel's effective cross-examination of Carter-Strong, the lack of other inconsistencies in Carter-Strong's account of the murder, and the remainder of the evidence adduced at trial, there is no reasonable probability that the result of Defendant's trial would have changed if only Defense Counsel had impeached Carter-Strong's testimony about the comment Defendant allegedly made in the bathroom. Because Defendant's claim does not establish prejudice as defined in Strickland, this Court denies Ground Seven of Defendant's motion.

35

Id. at 412–13 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-31 at 2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Snodgrass is not entitled to relief on the basis of this claim.

### G. Ground Seven

Snodgrass argues counsel was ineffective when he failed to object to the prosecutor's improper remarks during closing arguments. See Amended Petition at 30. Snodgrass raised a substantially similar claim in his amended Rule 3.850 motion. Doc. 12-27 at 31–42. The postconviction court denied relief, stating in pertinent part:

> The purpose of closing argument is to review the evidence and illuminate the reasonable inferences the jury may draw from that evidence. Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985);

36

see, e.g., Merck v. State, 975 So. 2d 1054, 1064 (Fla. 2007) (finding no impropriety in prosecutor's comments based on facts in evidence and common-sense inferences from those facts). Lawyers are afforded wide latitude during closing argument. Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982). Counsel may "argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." Miller v. State, 926 So. 2d 1243, 1254-55 (Fla. 2006).

Therefore, when a defendant claims a prosecutor made an improper comment during closing argument that warrants a new trial, the defendant must show the comments "either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise." Spencer v. State, 645 So. 2d 377, 383 (Fla. 1994). The proper method for reviewing the effect and, therefore, the prejudice of a prosecutor's comments, is to place them in context. Rose v. State, 985 So. 2d 500, 508 (Fla. 2008). And, "trial counsel cannot be deemed ineffective for failing to object to arguments that are proper." Rogers v. State, 957 So. 2d 539, 549 (Fla. 2007).

Having reviewed the entirety of the trial transcript, there was nothing improper about the State's closing argument to the jury. As such, Defense Counsel did not perform deficiently by failing to object in the ways Defendant advocates in his motion. Moreover, Defense Counsel effectively presented his competing interpretation of the evidence during his closing argument to the jury. Because Defendant can show neither the deficiency nor the prejudice

required by <u>Strickland</u>, this Court denies Ground Eight of Defendant's motion.

Finally, to the extent Ground Eight or any other portion of Defendant's motion makes a claim of cumulative error, such a claim is without merit. <u>See</u> <u>Schoenwetter v. State</u>, 46 So. 3d 535, 562 (Fla. 2010) (quoting <u>Israel v. State</u>, 985 So. 2d 510, 520 (Fla 2008)) ("Claims of cumulative error do not warrant relief where each individual claim of error is either 'meritless, procedurally barred, or [does] not meet the <u>Strickland</u> standard for ineffective assistance of counsel.").

<u>Id.</u> at 413–14 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-31 at 2.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Snodgrass is not entitled to relief on the basis of this claim.

38

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Snodgrass's ineffectiveness claim is still without merit because the record supports the postconviction court's conclusion. The Court will address Snodgrass's subclaims in turn.

### 1. Subclaims A, B, and C

First, Snodgrass takes issue with the following remark:

> This is how he [the victim] passed out. He didn't move. He wasn't seated up when Mr. Carter-Strong was in the car. How do you know that?
>
> The witnesses said Michael [the victim] wasn't fighting back. They didn't see him make any motion. Look at the blood on his back, how it dripped down. It's dripping down. It's just leaking out of his body at that point because he's laying there.

Doc. 12-11 at 172 (emphasis added); see also Doc. 12-27 at 31–32. According to Snodgrass, the prosecutor misrepresented the evidence because "[o]nly the codefendant [Carter-Strong] testified to whether or not the victim was fighting back," and "there was no corroboration amongst the witnesses to these facts." Doc. 12-27 at 32.

Similarly, Snodgrass contends the prosecutor misrepresented the consistency of the witnesses' testimony when he made the following remarks:

> You heard them all say the same position of where this defendant and Mr. Carter-Strong were

39

positioned at the window. Mr. Carter-Strong was on the left side. This defendant was on the right side. <u>Everyone was consistent about that.</u>

....

Now, you're also going to hear something— what's called an "independent act." And that occurs when a person other than the defendant—in this case, if Mr. Carter-Strong did some act which the defendant did not intend for it to occur. Did he not intend for a battery to occur on the victim? Did he not intend? But there's an "and" here. It has to be all of these. And which the defendant did not participate. Members of the jury, he participated. <u>Every witness said he was at the window making the same motions that Mr. Carter-Strong did, the same motions.</u> They thought it was punching. I contend to you that it was stabbing. He did some act. He did participate. So I would argue that there is not an independent act here.

Doc. 12-11 at 166, 184–85; <u>see also</u> Doc. 12-27 at 32–34.

Here, even if the above remarks constituted improper exaggerations of the evidence, Snodgrass has not demonstrated counsel was deficient for failing to object. During the defense's closing argument, counsel noted that the prosecutor misrepresented certain evidence and repeatedly emphasized that the attorney's statements and arguments were not evidence. Docs. 12-11 at 191–202, 12-12 at 6–8. The trial court also instructed the jury accordingly. Doc. 12-11 at 154; <u>see</u> <u>Brown v. Jones</u>, 255 F.3d 1273, 1280 (11th Cir. 2001)

40

(stating that "jurors are presumed to follow the court's instructions"). In light of his closing argument, counsel's decision not to object was within the wide range of professionally competent assistance, and he did not perform deficiently.

## 2. Subclaim D

Next, Snodgrass argues the prosecutor improperly bolstered a State witness's testimony by making the following remark:

> It's real interesting, the one person who doesn't know anybody, anybody—Mr. [Marshall] Rhodes was just going to meet his girlfriend this night, Miss Owen, just walking up the street, happened to hear a fight, doesn't know this defendant, doesn't know Mr. Carter-Strong. But when the police got there, he said, that's the dude that was in the truck, and when he was sitting here in front of you, he said, that's the dude who was at the truck window, when it looked to me like he was punching in the window. He pointed him out in court, and he doesn't even know this defendant. Doesn't even know him. <u>But he said the same thing today that he said two years ago to the police.</u>

Doc. 12-11 at 179 (emphasis added); <u>see also</u> Doc. 12-27 at 34–35. Snodgrass asserts that the State failed to present any evidence at trial that Rhodes previously identified Snodgrass to police as the assailant. <u>See</u> Doc. 12–27 at 34. Here, even assuming the prosecutor made an improper remark, counsel's failure to object did not result in prejudice. The remark was brief. Moreover,

41

considering the evidence detailed in Ground One, <u>supra</u>, no reasonable probability exists that the outcome of the proceeding would have been different if counsel had objected to the remark.

### 3. Subclaim E

Snodgrass also contends that the prosecutor improperly argued that Chelsea Swafford, a State witness, made inconsistent statements. <u>See</u> Doc. 12-27 at 35–37. He objects to the following remark:

> I can tell you the only person who was making inconsistent statements was Miss Swafford, when I had to keep reminding, do you recall saying at another time, you said this? Oh, yeah, yeah, I did say that. Do you recall at another time saying that they were both at the window? Yeah, Yeah, I did say that. Do you recall at another time saying that there were people in the house or what the other statements were? Oh, yeah, I do remember saying that. She's the only one.

Doc. 12-11 at 187–88. In context, the Court finds the prosecutor did not make an improper remark. While the prosecutor's use of the term "inconsistent statement" was inartful, the record reflects that the prosecutor had to remind Swafford of her prior statements when she testified. Doc. 12-11 at 12, 13. As such, counsel was not deficient when he failed to make a meritless objection. <u>See</u> <u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel was not ineffective for failing to raise a meritless argument).

42

## 4. Subclaim F

Snodgrass contends the prosecutor's description of the area where the incident occurred inflamed the jurors' passions. Doc. 12-27 at 37–39; see also Doc. 12-12 at 9–12. After a review of the record, the Court finds the improper comments did not pervade the proceedings. Therefore, even assuming arguendo counsel should have objected to the comments, they did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Further, given the evidence against Snodgrass, there is no reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different.

## 5. Subclaim G

Next, Snodgrass takes issue with the following remark:

> And do we not take seriously any bit of this trial? Absolutely not. Absolutely not. To say that we don't take seriously the burglary to that vehicle, when that defendant reached in and assisted in the death, the murder of Michael Wilson, to say that is inaccurate and an insult.

Doc. 12-12 at 10; see also Doc. 12-27 at 39. According to Snodgrass, "prosecutors effectively place[d] the weight of their office behind it's [sic] position by suggesting a special credence should be given to it's [sic] case

43

because of how seriously the state reacts to such allegation." Doc. 12-27 at 39.

The Court finds the above comment constituted a fair rebuttal to the

defense's own closing argument in which counsel argued that "to suggest that

because somebody sticks an arm into the car during the fight that somehow

it's a burglary now, that's just silly." Doc. 12-11 at 194. As such, counsel was

not deficient for failing to make a meritless objection. See Diaz, 402 F.3d at

1142.

### 6. Subclaim H

Last, Snodgrass argues that the cumulative effective of counsel's failure

to object substantially prejudiced the defense. Doc. 12-27 at 40. Where all

individual claims or error or prejudice are meritless, the claim of cumulative

error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117,

1132 (11th Cir. 2012). As the Court explained above, each of Snodgrass's

individual claims lack merit. Therefore, his claim of cumulative error fails.

See id. Accordingly, relief on the claims in Ground Seven is due to be denied.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Snodgrass seeks issuance of a certificate of appealability, the

undersigned opines that a certificate of appealability is not warranted. The

Court should issue a certificate of appealability only if the petitioner makes

"a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Snodgrass "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

45

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. 9) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    If Snodgrass appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of February, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

46

Jax-9 2/4

c:    Rondle Lee Snodgrass, III, #J42636
      Counsel of record